2025 IL App (1st) 251151-U

No. 1-25-1151B

Third Division
September 24, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 24 CR 0393501 |
| v. | ) ) | |
| | ) | The Honorable |
| ROSIE CHAVEZ, | ) ) | Charles P. Burns, Judge Presiding. |
| Defendant-Appellant. | ) ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The circuit court's order finding that defendant's continued pretrial detention was necessary is affirmed, where the proffered evidence established that defendant continued to pose a real and present threat to the safety of the community and no pretrial conditions could mitigate that risk.

¶ 2     Defendant Rosie Chavez appeals from the circuit court's order detaining her before trial, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant contends that the

State failed to establish any of the requirements for pretrial detention. For the reasons that follow, we affirm the circuit court's order.

¶ 3                                        BACKGROUND

¶ 4        On March 22, 2024, defendant was arrested and subsequently charged with 11 offenses, including five counts of first degree murder (720 ILCS 5/9-1(a) (West 2022)), three counts of aggravated kidnapping (720 ILCS 5/10-2(a)(6) (West 2022)), one count of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(4) (West 2022)), one count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2022)), and one count of concealment of homicidal death (720 ILCS 5/9-3.4(a) (West 2022)), all stemming from an incident occurring on February 9, 2024. The State filed a petition for pretrial detention, alleging that (1) the proof was evident or the presumption was great that defendant had committed a detainable offense, namely, first degree murder, (2) defendant posed a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions could mitigate those risks.

¶ 5        On March 24, 2024, the parties appeared before the circuit court for a hearing on the State's petition and the State's proffer established that, at approximately 4:50 p.m. on February 9, 2024, defendant and an uncharged co-offender arrived at an automobile dealership in Rockford in a stolen Kia with stolen plates, while a second uncharged co-offender[1] arrived in a stolen Honda with stolen plates. Defendant was captured on surveillance video next to the stolen Kia and identified herself on the video in an electronic recorded interview. At the dealership, defendant and the first co-offender arranged to test drive a red Ford Escape SUV with the victim, a dealership employee. Defendant was in the driver's seat, the first co-offender was in

_____

[1] The names of the two co-offenders do not appear in the record on appeal.

the front passenger's seat, and the victim was in the backseat. Witnesses observed the victim enter the vehicle with the offenders and identified defendant in a photo array.

¶ 6     The Ford drove away but stopped nearby, where defendant called the phone number associated with the second co-offender. The stolen Honda then pulled up next to the Ford, and surveillance video captured the two vehicles sitting next to each other before quickly driving away. The surveillance video also appeared to show the rear driver's side door of the Ford trying to open as the vehicle drove down the roadway. The Ford eventually entered U.S. Highway 20, veered sharply off course, then struck a mounted sign on the side of the entrance ramp. A witness traveling on the road behind the Ford witnessed the crash and called 911. The witness then observed the victim lying motionless on the side of the road on the driver's side of the Ford.

¶ 7     The witness observed the Honda, which had been in front of the Ford prior to the crash, reverse along the shoulder, and a short male exited the Honda and walked back toward the Ford. The witness was able to observe that the trunk of the Honda was open. The trunk was then shut, and defendant entered the driver's seat of the Ford[2] and both vehicles drove away. The witness identified defendant in a photo array as the person she observed near the Ford.

¶ 8     The Illinois State Police subsequently responded to a call about a red Ford SUV abandoned in a lane of traffic on Interstate 294 near the Interstate 88 off-ramp. The vehicle was the same Ford taken from the dealership and exhibited front-end damage which was consistent with striking a road sign. The Ford was searched and found to contain two 9-millimeter spent shell

---

[2] The State's proffer did not indicate that the witness testified as to when defendant exited the Ford prior to reentering it.

casings and one .40-caliber spent shell casing, plastic zip tie restraints, blood spatter, and a "blonde strand of hair attached to a piece of scalp, consistent with [defendant's] hairstyle."

¶ 9 Early the next morning, on February 10, 2024, at 1:21 a.m., the stolen Honda was captured on surveillance video with its trunk ajar on the 3600 block of West 26th Street in Chicago. Defendant and the first co-offender were captured on video removing the victim's body from the trunk of the Honda. The victim was eventually taken to the medical examiner, who pronounced him dead and determined that he had died of multiple gunshot wounds. A search of his person revealed a 9-millimeter spent shell casing found within his clothing, and he had white ligature marks on his wrists consistent with being bound by zip ties.

¶ 10 The stolen Kia was abandoned at the dealership and was later recovered. A credit card with the name of the first co-offender and a spent shell casing were recovered from the owner of the Kia and turned over to the police. The two 9-millimeter casings recovered from the Ford, the casing recovered from the victim's person, and the casing recovered from the Kia were tested and shown to be fired from the same firearm. Police also learned in the course of the investigation that, shortly before the abduction at the dealership, a police squad noticed a Honda and a Kia at a donut shop on Archer Avenue and video surveillance captured defendant wearing the same clothing she was observed wearing at the dealership.

¶ 11 Defendant was depicted on the video embracing an employee at the donut shop, and officers learned that defendant was the mother of the cashier. Defendant's daughter had provided defendant's cell phone number as an emergency contact on her job application, and a former neighbor identified both defendant and the first co-offender from still images from the dealership. A search warrant for defendant's cell phone showed it was registered to her, and cell phone records showed that defendant's phone interacted with cell towers in Rockford

at the time of the victim's abduction, as well as cell towers near the location where the Ford was abandoned, near the location where the victim's body was found, and near the donut shop. Her cell phone movements consistently tracked the path of the Kia and the Honda, as determined by license plate readers, police observation devices, and surveillance video.

¶ 12    Defendant was placed into custody on March 22, 2024. A search warrant executed on her residence recovered a .40-caliber magazine with bullets, as well as a gray sweatshirt which the first co-offender appeared to be wearing in the video from the dealership.

¶ 13    In addition to the proffer as to the events of February 9, the State set forth the details of defendant's prior criminal history. Specifically, at the time of her arrest in the instant case, defendant was facing two pending cases for which she was currently on pretrial release, a 2023 case involving aggravated battery of a police officer and a 2024 case involving retail theft.[3] Defendant also had three felony convictions: a 2014 retail theft; a 2010 retail theft; and a 1998 robbery, which had been reduced from armed robbery and for which defendant received 14 years in the Illinois Department of Corrections.

¶ 14    Defendant's pretrial services public safety assessment returned a "yes" on the "new violent criminal activity" flag, as well as a score of six (of six) on the "new criminal activity" scale and a four (of six) on the "failure to appear" scale and recommended "supervision Level 3."

¶ 15    In response, defense counsel contended that the State had not established that the proof was clear that defendant had committed the alleged offense of first degree murder, as there was another person who was suspected in the case and there was no evidence "as to who was the one that pulled the trigger." Defense counsel also claimed that the address at which the search

---

[3] The State indicated that it was also seeking leave to file petitions for the revocation of pretrial release in both cases, which the circuit court granted, but those cases are not part of the instant appeal.

warrant was executed was not defendant's residence. As to her criminal history, defense counsel claimed that defendant was not the aggressor in the pending aggravated battery charge and that her only prior violent crime was the robbery, which occurred 26 years earlier. Accordingly, defense counsel claimed that there were pretrial conditions which could mitigate the risk of safety to the community.

¶ 16     After considering the parties' arguments, the circuit court entered an order granting the State's petition for pretrial detention. The circuit court found that the State had shown, by clear and convincing evidence, that the proof was evident or the presumption was great that defendant had committed a detainable offense under section 110-6.1(a) of the Code, namely, first degree murder, and that defendant posed a real and present threat to the safety of the community which could not be mitigated by conditions short of pretrial detention. The circuit court found that defendant was identified on video several times, including before the event, at the dealership, and moving the victim's body, and further noted that defendant had identified herself on one of the videos and admitted her presence at the dealership. The circuit court further found that her cell phone was tracked along the route that the vehicle took, which corresponded with the video evidence obtained by the State. The circuit court accordingly found that the State had sufficiently established that she had committed the charged offense.

¶ 17     The circuit court additionally found that defendant posed a real and present threat to the safety of the community, pointing to her criminal history. The circuit court noted that she was currently on pretrial release for the aggravated battery of a police officer and had a prior robbery which "shows a proclivity to use weapons during the commission of felonies." The circuit further observed that her pretrial assessment had a flag for violence and a score of six for new criminal activity. The circuit court found that these facts, combined with the evidence

of weapons recovered from the location of the search warrant and the use of zip ties during the victim's abduction, indicated that she posed a threat to "everyone in the community."

¶ 18    Finally, the circuit court found that pretrial conditions could not mitigate the threat posed by defendant. The circuit court observed that the instant crime occurred while defendant was on pretrial release for two different cases. In the case of the aggravated battery, she "posted a rather substantial bond" yet was cited for retail theft after posting bond and subsequently failed to appear at her court date for that charge. The circuit court found that her continuing to commit new offenses while on bond and her failure to appear in court "indicates a disregard for lawful court orders, and it indicates a disregard for appearing in court." The circuit court also noted that defendant had a "significant" criminal history. The circuit court found that electronic monitoring was not appropriate in the instant case, as "[e]lectronic monitoring involves a social contract, a contract between you and the law enforcement agency, and that social contract is a level of trust that you won't cut the bracelet and flee, that you won't cut the bracelet and commit another offense." The circuit court found that, "quite frankly, the nature and violence of this particular offense[ ] does not lead me to believe that you would honor any social contract that might be necessary for EM to be an effective form of mitigation of the real and present threat you are clearly to the community." As such, the circuit court ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial.

¶ 19    On July 1, 2024, defendant filed a motion for pretrial release, contending that she did not pose a real and present threat to the safety of the community and accordingly should be released from pretrial detention. Defendant also claimed that she had appeared at every court date set in the matter, and did not pose a risk of failing to appear if she was granted pretrial release.

7

The parties came before the circuit court[4] for a hearing on defendant's motion, and the State indicated that, in addition to its proffer from the prior hearing, defendant had a more extensive criminal background than had previously been proffered. Specifically, the State's proffer established that defendant had a total of 10 felony convictions. The robbery conviction which had previously been proffered was, in fact, seven convictions—five for robbery and two for armed robbery—the sentences for which were served concurrently. Defendant also had a previously undisclosed 1995 armed robbery conviction for which she was sentenced to six years in the Illinois Department of Corrections. The State further indicated that, at the time of the instant offense, she also had two pending 2017 cases for retail theft in DuPage County, for which she had been "out on a warrant" for two and a half years before being arrested on the warrant in 2023.

¶ 20    In response, defense counsel denied that a warrant had been outstanding in the DuPage County cases and claimed that defendant had turned herself in a day after missing court due to being hospitalized. Defense counsel also emphasized the age of defendant's prior convictions, noting that her armed robbery convictions were over 20 years old. While it was not listed in the motion, defense counsel additionally argued that the State had failed to establish that defendant had committed the crime.

¶ 21    After considering the parties' arguments, the circuit court entered an order denying defendant's petition for pretrial release. The circuit court agreed with the reasoning in the initial detention hearing, acknowledging defendant's argument that there was no evidence that she was the shooter but observing that there was a great deal of evidence supporting murder under

---

[4] We note that the judge hearing the motion was not the same judge who entered the initial pretrial detention order.

an accountability theory. The circuit court further agreed with the prior reasoning concerning defendant's threat, emphasizing that the victim appeared to be picked randomly—"not like an individual getting into a disturbance with a domestic partner or a relative or a sworn enemy"— yet it was clear that it was a preplanned armed robbery, at minimum. The circuit court noted that "[t]he threat of violence in a random case is very, very concerning, because if you're just choosing one person for no particular reason, there is an inference that can be drawn that you are dangerous to other people in the community." Finally, the circuit court agreed with the prior reasoning concerning pretrial conditions, finding that no such conditions could mitigate the threat posed by defendant. The circuit court accordingly ordered defendant's continued detention.

¶ 22    On May 15, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (Apr. 15, 2024), seeking pretrial release. Defendant first claimed that there had been a change in circumstances sufficient to warrant a redetermination of her detention status. Specifically, defendant claimed that, since the prior detention hearings, counsel had the opportunity to review the video footage in which defendant could allegedly be observed with the victim's body. Counsel claimed that, after reviewing the footage, "the individual who the State alleges to be [defendant] cannot be seen, nor can any individual be made out through the quality of the video." Defendant additionally claimed that one of the matters which had been pending at the time of her initial arrest had since been resolved. Defendant argued that this new information constituted a change in circumstances sufficient to warrant a redetermination of her detention status. Defendant further contended that the change in circumstances meant that the State could not meet its burden of proving that she posed a real and present threat to the safety of the community.

¶ 23 The parties came before the circuit court for a hearing on defendant's motion on June 2, 2025, where the circuit court reaffirmed its prior findings that continued detention was necessary. This appeal follows.

¶ 24 ANALYSIS

¶ 25 On appeal, defendant contends that the State failed to establish any of the requirements for pretrial detention. The Act provides that a defendant may be denied pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption is great that the defendant has committed a qualifying detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or of the community, and (3) no condition or combination of conditions can mitigate the threat to the safety of any person or persons or of the community. 725 ILCS 5/110-6.1(e) (West 2022). In addition, once a defendant has been detained pursuant to section 110-6.1(e), the Act requires that, "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 26 Our supreme court has instructed that, with respect to an initial detention hearing, where the parties proceed solely by proffer, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review" of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. Some courts have also applied the supreme court's reasoning to continued detention hearings conducted by proffer, reviewing the circuit court's decision on continued detention *de novo*. See, *e.g.*, *People v. Brito*, 2025 IL App (1st)

242601-U, ¶ 45. We have no need, however, to resolve the question as to the appropriate standard of review, as our decision would be the same regardless of the standard applied.

¶ 27     As an initial matter, we must clarify which arguments are at issue on appeal. In her memorandum in support of her appeal, defendant argues that the State failed to establish any of the three requirements for pretrial detention. In her motion for relief before the circuit court, however, defendant challenged only whether she posed a real and present threat and whether that threat could be mitigated by pretrial conditions. Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) provides that a defendant is required to present a written motion in the circuit court "requesting the same relief to be sought on appeal and the grounds for such relief." Rule 604(h)(2) is clear that "[u]pon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." *Id.* Accordingly, since defendant did not raise the sufficiency of the State's evidence as to the first element in her motion for relief, we have no need to consider that issue on appeal.

¶ 28     We observe, however, that even if we consider the merits of defendant's argument concerning the first element, we find such an argument unpersuasive. The State proffered a great deal of evidence as to defendant's involvement in the proceedings, both before and after the victim's death. Even if there was no evidence that defendant was the shooter, an individual may be guilty of first degree murder under a theory of accountability. See 720 ILCS 5/9-1(a), 5-2(c) (West 2022); see also *People v. Cerda*, 2021 IL App (1st) 171433, ¶¶ 73-75. Here, the State's proffer established that defendant and the two co-offenders visited the dealership—in stolen vehicles, armed with firearms and zip ties—where they drove away in the Ford with the victim. A short time later, the Ford crashed, the victim was observed lying on the side of the road, and the victim's body was later removed from the trunk of the Honda. Defendant was

identified multiple times throughout the course of the proceedings, and her cell phone was tracked along the entire route, from the initial visit to the dealership through the location where the victim's body was removed from the trunk. Even accepting as true defense counsel's claim that the quality of the video depicting the victim's body being removed from the trunk was too poor to identify defendant, the State's proffer still contained sufficient evidence that defendant had committed first degree murder for purposes of the pretrial detention analysis.

¶ 29 We similarly find unpersuasive defendant's claims concerning whether she posed a real and present threat to the community or whether pretrial conditions could serve to mitigate such a risk. Defendant focuses on the age of her prior criminal offenses, and contends that her employment history and ties to the community establish that she "is not a violent person and has since proven to be an upstanding citizen of the community." Her criminal offenses, however, include violence and resulted in substantial sentences, and we observe that her pretrial assessment placed her at the highest level on the new criminal activity scale, including a "yes" result on the new violent criminal activity flag. The circuit court was certainly entitled to consider this history in determining whether she continued to pose a threat.

¶ 30 Defendant also wholly disregards the circumstances of the offenses at issue. As the circuit court observed, both in the initial detention hearing and in the continued detention hearings, the presence of zip ties in the vehicle suggested that the abduction of the victim was preplanned at least to some extent. The fact that the victim also appeared to have no ties to the offenders and was, instead, an innocent stranger also increased the level of threat to the community as a whole, since the abduction was not targeted at any specific individual. We thus agree with the circuit court that defendant continued to pose a real and substantial threat to the safety of the community such that pretrial detention was warranted.

¶ 31    We also agree with the circuit court that no pretrial conditions could mitigate such a threat. While defendant points to the fact that her pending matters have since been resolved, the fact remains that at the time of the commission of the instant offense, defendant was on pretrial release for two other offenses, strongly suggesting that she was unlikely to comply with future conditions of pretrial release. In addition, defendant's history of nonappearance in court is further evidence that she would be similarly unable or unwilling to comply with any pretrial conditions set by the circuit court. We accordingly find no error in the circuit court's finding that no pretrial conditions could adequately mitigate the risk posed by defendant. Consequently, we affirm the circuit court's finding that defendant's continued detention was necessary.

¶ 32                                         CONCLUSION

¶ 33    The circuit court's order finding that defendant's continued detention was necessary is affirmed, where the proffered evidence established that defendant continued to pose a real and present threat to the safety of the community and no pretrial conditions could mitigate that risk.

¶ 34    Affirmed.